RECEIVED
AND

2002 DEC 26  AM 10: 01

LANCE S. WILSON
CLERK
BY

1  **MALIK W. AHMAD**
608 Jade Cliffs Lane
2  Las Vegas, Nevada 89144
Tele (702) 641-7840
3  *In Pro Se*

4

5

6

7  **UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8                                              CV-S-02-1718-JCM-RJJ

9  Malik Waqar Ahmad        Plaintiff,      )
   *In Pro Se*                              )
   vs.                                      )

10 State Bar of Nevada,                     )
   600 East Charleston Blvd                 )
11 Las Vegas Blvd, Nevada 89104             )

12 Mr. Richard Trachok II, Esq.             )
   Chair, Board of Bar Examiners            )
13 600 East Charleston Blvd                 )
   Las Vegas, Nevada 89104                  )
14                                          )   Complaint Under The
                                            )   American With Disabilities Act 1990
15 Ms. Patrice J. Eichman, Esq.             )   & US & Nevada Constitution
   Director of Admission                    )
16 State Bar of Nevada                      )
   600 East Charleston Blvd                 )   **JURY DEMANDED**
17 Las Vegas, Nevada 89104    Defendants(s) )
                                            )   DATE:
18 DOE 1 to 10 in the State of Nevada       )   TIME OF HEARING:

19    **COMES NOW,** Plaintiff *In Pro Se*, and hereby moves this court for grant of relief,

20 permanent injunction and equitable relief under the American With Disabilities Act, Section 504

21 of the Rehabilitation Act, as well as relief consistent with his rights as a US citizen, both under

22 the United States and Nevada Constitution. This complaint is made and based upon papers and

23 pleadings on the file here, the Exhibits (1-9) attached hereto, the Points and Authorities

24 incorporated herein, and such argument as may be presented at the time of hearing.

25    RESPECTFULLY SUBMITTED THIS 26TH day of December, 2002.

26                                         _____
                                          MALIK WAQAR AHMAD
27                                         608 Jade Cliffs Lane
                                          Las Vegas, Nevada 89144

# I. JURISDICTION

1. This is a civil action seeking judgement, relief and/or damages brought pursuant to the American with Disabilities Act (ADA), 42 U.S.C §12101 *et seq.*, as amended, for discrimination based upon a disability and the failure to accommodate same. This honorable Court has jurisdiction of this action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, 28 U.S.C.§§ 1331 and 1343(4). The ADA Title II, 42 U.S.C. 12131-12165, addresses discrimination by governmental entities in the operation of public services, programs, and activities; and Title III, 42 U.S.C. 12181-12189, addresses discrimination in public accommodations operated by private entities. Courses and exam related to professional, or trade related applications, licensing, certificates or credentialing must be provided in a place and manner accessible to people with disabilities, or alternative accessible arrangements must be offered. Also, this complaint is based on Plaintiff's constitutional rights arising under Due Process Clause and Equal Protection both under the US and Nevada Constitution. These are proper federal questions and, therefore, US District Courts of Nevada have proper jurisdiction.

# II. PARTIES

2.    a.    Plaintiff:    Malik W. Ahmad
              Address:    608 Jade Cliffs Lane
                      Las Vegas, Nevada 89144

      a.    Defendant:    State Bar of Nevada
              Address:    600 East Charleston Blvd
                      Las Vegas, NV 89104

      b.    Defendant:    Mr. Richard Trachok II, Esq.
              Official Position:    Chair, Board of Bar Examiners
              Address:    600 East Charleston Blvd
                      Las Vegas, NV 89104

      c.    Defendant:    Ms. Patrice J. Eichman, Esq.
              Official Position:    Director of Admissions
              Address:    600 East Charleston Blvd
                      Las Vegas, NV 89104

1  3. **Disability**. My disability is as follows: Rheumatoid; arthritis; carpal tunnel syndrome;

2  pinched nerves; permanently injured vertebral column; constant headache; lingering back pain;

3  and recurring ulcerous conditions.

4  ### III. FACTS

5  4. **Discrimination Based on the Basis of Disability**. Plaintiff appeared as "Applicant 0059",  in

6  July 2002 Nevada Bar Exam, and was allowed use of laptop computer as per Nevada Bar rules since

7  1999. Applicants were routinely allowed to hook up external keyboards or external mouses with their

8  laptops, without any prior certification of accommodation, pursuant to this general permission of

9  using laptop computers from 1999. Previously, Nevada Bar never specifically asked such an

10  accommodation request for essay writing in Bar Exam conducted in 1999, 2000, 2001. This did not

11  give any preferential advantage over the general applicants. No additional accommodation was ever

12  sought by Nevada Bar for this purpose.  Previously, Plaintiff had himself used external keyboard

13  attached to his laptop without seeking any extra accommodation from Nevada Bar in 1999, 2000,

14  2001.

15  4.1 Plaintiff did not seek any accommodation as no accommodation was either required or

16  sought by Nevada Bar as being not routinely considered a subject matter for an accommodation in

17  1991, 2000, 2001, 2002. The literature provided by Nevada Bar, in this regard is very limited, and

18  does not provide any list for disabilities and corresponding accommodations.

19  4.2. On July 30, 2002, when Plaintiff wanted to attach his external keyboard with his laptop

20  in the exam hall, he was stopped by the exam personnel.  Plaintiff protested that no such prior

21  notification was given by Nevada Bar to this effect and it would be extremely difficult for him to

22  type on the congested inbuilt keyboard of the laptop owing to his physical disability. The exam

23  personnel showed him a handwritten poster affixed outside of hall, prohibiting such use and that

24  "they are merely enforcing the policy". There were no notification sent to Plaintiff for this purpose

25  from Nevada Bar, or to other general applicants using laptops, other than this sole hastily

26  handwritten notice posted outside the exam hall.

27  4.3  Surprisingly, other bar applicants using laptops were allowed the use of an external

1   mouse attached to their laptop, as an auxiliary aid, without any requirement of certification of

2   accommodation. By this policy Defendants created two kinds of classes i.e **one with external**

3   **keyboard**, and the other with **external mouse attached with their laptop computers**. The former

4   were denied use of any external attachment but the later were allowed the auxiliary attachment of

5   an external mouse with their laptops.

6       4.4   Plaintiff was constrained to use the **inbuilt keyboard of his laptop** for the morning

7   session by denial of his rights under ADA by the Defendants. With numb, swollen fingers, constantly

8   typing on an alien and uncomfortable inbuilt keyboard, Plaintiff finally gave up typing on the inbuilt

9   laptop keyboard for essay 1-2 and instead opted to handwrite the essay (Exhibit 2).   Due to severe

10  numbness in his palms and swollen fingers, Plaintiff could not write properly and mentally composed

11  essays in proper rational and speedy way. When the result came, Plaintiff was overwhelmingly failed

12  in Essay 1-2 obtaining 59.30 score (Exhibit 3).  Plaintiff obtained 73.09 as against the required 75

13  for passing Nevada Bar and was declared failed by the Defendants. (Exhibit 1)   Plaintiff had worked

14  hard for this exam working 10 to 14 hours, and the failure of essay on Property Law (Essay 1-2,

15  Exhibit 2) was the direct result of this sudden change of policy by Nevada Bar, principally set and

16  enforced by the Defendants. Defendants also violated his constitutional rights under the Due Process

17  Clause, and Equal Rights of 4th Amendment, as well as 14th Amendment of Nevada Constitution, **by**

18  **not providing him notice as well as by creating disparate classes i.e one with allowance of**

19  **auxiliary external mouse attached with their laptop (allowed), and the other external**

20  **attachment of their keyboard with laptop (denied).** This action by Nevada Bar/Defendants, as

21  a public entity, constituted state action as well.

22      4.5  Plaintiff located Alexis (Investigator, Nevada Bar), and apprized her of his plight and

23  requested to locate Defendant (Director of Admissions) Ms. Patrice J. Eichman. She showed her

24  inability, and when Plaintiff stressed that it being extremely urgent, eventually found her. Plaintiff

25  told Defendant Ms. Eichman about his inability to use laptop inbuilt keyboard owing to his physical

26  conditions and prevailing disability. Defendant Ms. Eichman told Plaintiff that there is "nothing she

27  can do as it is the Board's policy, and that Plaintiff cannot be allowed the auxiliary aid of an external

1  keyboard". Plaintiff pointed out to Defendant that there was no notice or prior notification sent to

2  him, or in general to this effect, to other candidates, as such he could not request any

3  accommodation. To this Defendant directed Plaintiff, to a hastily handwritten notice, posted outside

4  the door, and said it is the "Board's policy now and I am denied the use of an external keyboard."

5  Hopelessly, Plaintiff left the break time after the morning session on July 30, 2002, in extreme

6  desperation and frustration. His hopes of passing the bar exam were getting frustrated despite his

7  extreme hard work.

8      4.6 Sometime in the afternoon on July 30, 2002, Defendant Ms. Eichman met Plaintiff, and

9  told him that Nevada Bar can "accommodate his request only if he furnishes a medical certificate

10  forthwith." Plaintiff informed her that he cannot see his physician, owing to their prior scheduling

11  and appointments, and also due to his own preoccupation with the ongoing exam. A simple meeting

12  with a physician needs advance scheduling, and one cannot even locate them in such short span of

13  time. Defendant stated, "it is the only choice I have".

14      4.7 After Plaintiff's repeated assurance to Defendant Ms. Eichman that he would definitely

15  provide her a medical certificate during the ongoing exam, Plaintiff was, however, allowed the use

16  of an external keyboard, for the remaining part of the exam, sometime in the afternoon on July 30,

17  2002. Plaintiff finally got a medical certificate during the ongoing exam, through great effort and

18  considerable waste of time (Exhibit 4, dated July 30, 2002), but could not trace Defendant Ms.

19  Eichman, and dispatched the same by mail (Exhibit 5).

20      4.8 Plaintiff was declared fail by State Bar of Nevada, with a scale score of 1.89, vide letter

21  dated October 16, 2002 (Exhibit 1 & 3). Plaintiff passed five essays as against the required three

22  (Exhibit 3). Plaintiff's failure in Essay 1-2 (handwritten), was directly contributory to his failure

23  in the examination as his rights under the ADA were denied, as he obtained the lowest grades in that

24  essay (Exhibit 2).

## IV. LAWS, POINTS & AUTHORITIES

26  5. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, contains an "antidiscrimination

27  mandate" to eliminate discrimination against individuals with disabilities. ***School Bd. Of Nassau***

*County V. Arline,* 480 U.S. 272, 286 n.15, 277 (1987). Congress enacted the ***Americans with Disabilities Act of*** 1990 (ADA), 42, U.S.C. 12101, to establish a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities". 42 U.S.C. 12101(b)(1). Although state entities are regulated under Title II of the ADA and not Title III, it may be instructive to consider one Title III regulation (36.309), as printed in ***Federal Register*** *(* because it presents the most relevant regulation regarding exams.) (*Federal Register (1991, July 26). Rules and Regulations on the American with Disabilities* Act, 56, 144, 35598-35599)

> **"The exam is selected and administered so as to best ensure that when the exam is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the exam results accurately reflect the individual's aptitude or achievement level or whatever other factor the exam purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills** *(except where those skills are factors that exam purports to measure" (italics added) (Federal Register,* 1991, pp. 35598-35599)

> **"Required modification to an exam may include changes in the length of time permitted for completion of the exams and adaptation of the manner in which the exam is given"** (p.35599).

> **"A private entity offering an exam.....shall provide appropriate auxiliary aids**....*unless that private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the exam is intended to test or would result in an undue burden (italics added)"* (p.35599*)*.

5.1 Title II of ADA provides that "**no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected** to discrimination by any such entity". A **"public entity"** is defined to include "any State or local government" and its components. 42 U.S.C. 12131(1)(A) and (B). A **"qualified individual with disability"** is a person, "**who, with or without reasonable modifications meets the essential eligibility requirements"** for the

governmental program or service 42 U.S.C 12131(2). Title II may be enforced through private suits against public entities. 42.U.S.C. 12133.

5.2 **DOJ's Implementing Regulations for Title II.** It provide, in relevant part as follows: (*See* 56 *Fed. Reg.* 35,716 (July 26, 1991) reprinted in 28 C.F.R, Part 35, App. A (1994) (*See especially id*, App. A, at pp 448-49-451-52)."

The Justice Department further contends that because Congress explicitly delegated authority to them to construe the ADA by regulation, the Department's regulations are legislative and should be accorded "controlling weight unless [the regulations] are arbitrary, capricious, or plainly contrary to the statute." See *Memorandum of Law by Amicus Curiae* United States at 15, ***Roshental v. New York State Bd. of Law Examiners***, No. 92 Civ.1100 9(JSM)(S.D.N.Y).(Apr. 13, 1992).

"(6) A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, not may a public entity establish requirements for the programs or activities of licenses or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability."

"(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity."

"(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. (CFR S 35.130(b)(1994). The implementing regulations for Title II were first published in July 1991, along with DOJ's explanatory text.

5.3 **The Technical Assistance Manual** (*The Americans with Disabilities Act: Title II Technical Assistance Manual*. Washington DC: US Department of Justice, Office of the Americans with Disabilities Act) expanded this slightly as follows:

1    1) Individuals who have a physical or mental impairment that substantially limits one or

2    more major life activities;

3    2) Individuals who have a record of a physical or mental impairment that substantially

4    limited one or more of the individual's major life activities; and

5    3) Individuals who are regarded as having such an impairment, whether they have the

6    impairment or not (Civil Rights Division, undated p3).

7    5.4  Section 3(1) of the ADA defines "**Auxiliary aids and services**".----The term "**auxiliary**

8    **aids and services**" includes---

9    "(A) qualified interpreters or other effective methods of making aurally delivered materials

10    available to individuals with hearing impairments;

11    (B) qualified readers, taped texts, or other effective methods of making visually delivered

12    materials available to individuals with visual impairments;

13    **(C) acquisition or modification of equipment or devices; and**

14    **(D) other similar services and actions."**

15    **V.  CONSTITUTIONAL ISSUES**

16    6.  **Different Treatment.**  Under federal nondiscrimination laws, policies and practices must be

17    applied consistently to an individual or group of students regardless of their race, national origin,

18    sex, or disability. Title VI, Title IX, Section 504, and the ADA prohibit intentional

19    discrimination on the basis of race, national origin, color, sex, or disability. *Elston v. Talladega*

20    *County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993).  Evidence of discriminatory intent

21    may be direct or circumstantial such as evidence of different treatment. Different treatment may

22    be justified by a lawful reason, for example, to remedy prior discrimination. See generally *United*

23    *States v. Fordice,* 505 U.S. 717, 728-30 (1992); *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267,

24    290-91 (1986); *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 305-20 (1978)

25    6.1 **Disparate Impact:** This impact analysis applies when the application of a neutral

26    criterion or a facially neutral practice has discriminatory effects and the criterion or practice is not

27    determined to be "educationally justified" or "educationally necessary".  In contrast to intentional

1 | discrimination, the disparate impact analysis does not require proof of discriminatory motive.

2 | Under the disparate impact analysis, the party challenging the criterion or practice has the burden

3 | of establishing disparate impact. If disparate impact is established, the party defending the

4 | practice must establish an "educational justification". *See Board of Educ. v. Harris*, 444 U.S.

5 | 130, 143 (1979); *Georgia State Conf. of Branches of NAACP v. Georgia*, 775 F.2d 1403, 1412

6 | (11th Cir. 1985); *Groves v. Alabama State Bd. of Educ.*, 776 F. Supp. 1518 (M.D.Ala. 1991).

7 | 6.2 **Due Process** The Fifth Amendment states that no citizen shall be deprived of life,

8 | liberty, or property, without due process of law. The Fourteenth Amendment applied this passage

9 | to the states as well. Today it is used by the judiciary to define the scope of fundamental fairness

10 | due to each citizen in his or her interactions with the government and its agencies. Some courts

11 | have held that a student's expectation in receiving a high school diploma in return for meeting

12 | certain attendance and academic criteria is a form of a property right or liberty interest. See

13 | *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir. 1981); *Crump v. Gilmer Indep. Sch. Dist.*, 797

14 | F. Supp.552, 555-56 (E.D. Tex. 1992).

15 | It was fundamentally unfair for the Defendants to deprive Plaintiff's due process rights in

16 | not providing him notice and a hearing, as well as a review procedure.  Plaintiff was therefore

17 | deprived of a property or liberty interest.

18 | 6.3 **Equal Protection**. Classifications or distinctions based on race, sex or other grounds

19 | are violative of the Equal Protection clause of the Fourteenth Amendment to the US Constitution

20 | when imposed by state or local government agencies. Intentional discriminatory conduct will

21 | violate the Fourteenth Amendment, unless the action is narrowly tailored to serve a compelling

22 | purpose. A facially neutral practice may be found in violation of federal law if the practice results

23 | in significant differences in the distribution of benefits or services to persons based on race,

24 | national origin, sex or disability without a substantial legitimate educational justification or there

25 | are equally or comparably effective alternative practices available that meet the institution's goals

26 | with less disparate impact. See, e.g., *Lau v. Nichols*, 414 U.S. 563 (1974); *Larry P. v. Riles*, 793

27 | F.2d 969 (9th Cir. 1984).

1        6.4  **United States Supreme Court in *In Schware v. Board of Bar Examiners of New***

2    ***Mexico,*** 353 U.S. 232, 238-239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957), has said:

3        *"A State cannot exclude a person, from the practice of law or from any other occupation*

4        *in a manner or for reasons that contravene the Due Process or Equal Protection Clause*

5        *of the Fourteenth Amendment. A State can require high standards of qualification, such*

    *as good moral character or proficiency in its law, before it admits an applicant to the*

6        *bar, but any qualification must have a rational connection with the applicant's fitness or*

7        *capacity to practice law.... Even in applying permissible standards, officers of a State*

8        *cannot exclude an applicant when there is no basis for their finding that he fails to meet*

    *these standards, or when their action is invidiously discriminatory."*

9

10       6.5  **Procedural Due Process:** Procedural due process includes notice and the right to be

11   heard. Some courts have found that procedural due process applies to the implementation of

12   minimum competency examinations required for high school graduation. ***Debra P. v.***

13   ***Turlington,*** 474 F. Supp. 244, 263-64 (M.D. Fla. 1979), affi'd in part and vacated in part, 644

14   F.2d 397 (5th Cir.1981); ***Erik V. v. Causby,*** 977 F. Supp. 384, 389-90 (E.D.N.C. 1997); ***Crump***

15   ***v. Gilmer Indep. Sch. Dist.,*** 797 F. Supp. 552, 555-56 (E.D.Tex.1992).

16       6.6 **Notice**  Courts have held that students with disabilities may require more advance

17   notice and more substantial opportunities to prepare for such testing than may be otherwise

18   necessary. ***Brookhart V. Illinois State Board of Education,*** 697 F. 2d 179 (7th Cir. 1983).

19   Plaintiff and other similar applicants were denied such advance notice.

20                                     **V.  OTHER AUTHORITIES**

21   7. **NCBE Guidelines for Testing Disabled Applicants**. National Conference of Bar Examiners

22   (NCBE) has published a set of guidelines for testing applicants with disabilities and to bring

23   changes *to Standard 22 of the Code of Recommended Standards for Bar Examiners.* (J.P. Smith,

24   NCBE *Guidelines for Testing Disabled Applicants*, The Bar Examiner, Vol. 60, No. 1, at 28 (Feb

25   1991). See also, (G.R. Overton, *Accommodation of Disabled Persons*, The Bar Examiner, Vol.

26   60, No. 1, at 6 (Feb. 1991)). It has published the following set of guidelines:

27           **"Candidates with Other Physical Disabilities"**.

"Some mobility-impaired candidates, such as somebody with paraplegia or a broken leg, may be accommodated in a regular test administration if the testing site is accessible, there are accessible toilet facilities, and there is handicapped parking nearby. However, many candidates may need extra resting time, extra testing time, or other special accommodations. Sometimes, an impairment of the upper extremities may necessitate the use of a felt tip pen to record answers on a large print answer sheet. Sometimes a reader/recorder may be necessary."

**"Test Timing"**.

How much time is enough extra time for individuals with disabilities? An appropriate policy might be the following:

- "Time-and-half as a routine policy if the documentation of the past provisions of extra time exists.
- Double time in severe cases where documentation warrants it.
- Individually determined amounts of extra time for newly diagnosed disabilities". where no past documentation exists."

## VI.  IMPACT/PSYCHOMETRIC CONCERNS

8.  The most important considerations triggered by a testing accommodation provided to a disabled bar applicant will be a psychometric one. Psychometry is the science of measuring mental capacities and processes (*Oxford English Dictionary* 767, 2d. ed. 1989). The major psychometric issues are the ones of validity and fairness.  Nevada Bar uses a psychometric formula set by Dr. Joseph P. Klein, as the Board's Technical Adviser, in the pass/fail standard. Dr. Klein's method improperly inflates the pass/fail rate and make Nevada pass rate extremely restrictive. (Exhibit 3 ) Dr. Klein's assumption whether based on "cross-classification" or "regression" analysis, is completely based "on an invalid assumption that performance on the entire exam can be measured by performance on a single question." He had been much criticized by Society of American Law Teachers (a national faculty of 800 law professors) and by other psychometricians. (www.SALTlaw.org)

8.1  For many years, psychometricians have addressed themselves to the problem of removing testing restrictions for disabled individuals, without compromising the requirements and benefits of standardized exams. *Psychometric Assessment Issues Raised By The American*

1    *With Disabilities Act, The Scores new L (Am Psychol Ass'n)* Jan. 1993 (hereinafter,

2    *"Psychometric Assessment"*). The ADA provisions regarding testing have essentially two

3    conceptual requirements. "First, an exam must measures what it purports to measure. Second,

4    the skills purportedly measured by the exam must be profession related". Psychometricians

5    believe that the ADA requirements to modify tests or their administration to accommodate the

6    needs of persons with disabilities raises questions in 4 primary areas. (*Psychometric Assessment*)

7        "The first two areas address the fundamental question of whether scores on a modified
tests can be meaningfully compared with those arising from a standardized administration. More

8    specifically, how would a disabled person, taking an adapted form test have performed if he or
she could have taken the test under standardized conditions and do the modified and standardized

9    tests scores predict the same kinds of behaviors and do they predict them equally well."

10        8.2 **Validity of Inference** The most critical psychometric characteristic of any test is **the**

11    **validity of the inference made from the test scores**. The inference made from a licensing exam

12    such as bar exam is that the individuals who pass are minimally competent to practice law and

13    that the individuals who fail are not competent.

14        The major psychometric issues are fairness and validity. How can one make the scores

15    from disabled candidates taking a test under non-standard administrative conditions comparable

16    to those obtained by non-disabled candidates taking the test under the standard conditions?  Do

17    they have the same factor structure, the same degree of reliability, the same precision in

18    prediction etc? The ADA recognized the importance of validity when it stated that the exam

19    results must accurately reflect the factor the exam purports to measure rather than the

20    impairment. (*Psychometric Assessment*)

21        8.3 **Denial of "Level Playing Field"**. The regulation implementing **Title III of the**

22    ADA specifically provides that **private entities offering exams must allow additional time**

23    **when necessary to accommodate disabled individuals** 28. C.F.R. S 36.309(1992).

24    Psychometricians believe that modifying tests by permitting significant time extensions could

25    alter both the construct and the predictive validity of the test *(Psychometric Assessment, supra)*.

26    Hence, the interpretation of the test scores could be changed, as well as the ability to make

27    predictions of future behavior based on those test scores. They also believe that some **"relaxed**

1   **time limits are permissible in that the time extensions "level the playing field" for disabled**

2   **examinees.** (*Psychometric Assessment, supra*)

3        Accommodation under the ADA do not require the alteration of standards but merely that

4   disabled individuals be given a reasonable opportunity to meet the same standards that apply

5   generally. (***Southeastern Community College v. Davis***, 442 U.S. 397. 1979). The DOJ takes the

6   position that there is a presumption that time extensions are *per se* reasonable accommodations

7   under the ADA. 28 C.F.R S36.309(b)(2)1992.

8        8.4  The stress arisen from the unknown and unpredictable behavior by Defendants, in not

9   providing him a timely accommodation, had inhibited Plaintiff's performance in actual test

10   taking.  Nevada Bar is not only an exam of knowledge, skill in legal principles, but also a test of

11   physical and emotional endurance.  Plaintiff was neither apprized nor accommodated in any such

12   possible extension of time for his exam. Hence, he had been doubly discriminated again by

13   Defendants, (individually and severally) after the provision of a duly authorized medical

14   certificate (Exhibit 4).

15   9. Defendant Ms. Eichman, acting as Director of Admissions, State Bar of Nevada on October

16   16, 2002 sent Plaintiff a letter (Exhibit 1), stating denial of his application for admission "based

17   on the failure to pass the 2002 bar exam pursuant to Supreme Court Rule 70".  Such scores were

18   prepared by Board's psychometrician:

19       "The formulas reflected on your score report are a simplified version of the formulas
reflected on the Formulas for Converting and Combining Scores as filed with the

20   Supreme Court and are presented in this manner to facilitate your calculations." The
formula provided by the said letter (Exhibit 3 ) was as follows:

21          <u>2002</u>

22       Essay Scale = .22823* (sum of Converted Scores ) + -10.5466

    Total Score = [ (2) * (Essay Scale) + MBE Scale ] /5.679

23       <u>2001</u>    (Exhibit 6)

24       Essay Scale = .22648* (sum of Converted Scores ) + -7.28984

25       Total Score = [ (2) * (Essay Scale) + MBE Scale ] /5.679

    Why two formulas for the previous two years are different and what necessitated change

26   from one year to another?

27

9.1 **Decimal Points**. It was difficult for Plaintiff to comprehend as the scores were provided in two decimal points instead of the whole numbers. The Plaintiff requested the detailed version of the such formula(e) on November 11, 2002, and a reminder of this letter was sent on November 22, 2002 to Defendant Ms. Eichman. (Exhibit 7) No such reply was ever received by Plaintiff from Defendants. It seems Defendants never wanted to give a plausible explanation or to reveal to him such a detailed formula or its application. Such non provision of a basic request by Defendants to Plaintiff, is manifestly capricious, arbitrary, non-meritorious, and purely discriminatory.

9.2 Rule 65 "Upon receipt of a recommendation for admission from the board of bar examiners, the court may admit to the practice of law any and all applicants so recommended having a total scale score of not less than (75) 75.00 on the exam, a scale score of not less than (85) 85.00 on the Multistate Professional Responsibility Exam."

The Plaintiff already passed the MPRE, securing 112 (Exhibit 8), and obtained total scale score of 73.00 in Bar Exam 2002, and declared fail with a deficiency of scale score of 1.89 (Exhibit 3), which is directly attributable to the discriminatory impact by Defendants (individually and severally), by denial of his rights under the ADA, denial of his constitutional rights, as well as an inherently flawed scores system, based on some incomprehensible psychometrician formula.

9.3 **Grading Guidelines and Model Answers**. Nevada Bar only allows the review of the exam answer booklets as originally written by the applicants declaring some as the so-called representative answers by Bar graders, but nonetheless denies or have no provision to furnish any model answers as originally written by the bar graders and any grading guidelines. This is not only a violation of the Due Process but also a violation of the public record law.

These grading outlines and model answers changes from one examination to another each year so there is no scope of any permanent confidentiality.

9.4 **Psychometric Formula.** Why Nevada Bar needs psychometrician to interpret its rules and regrade students scores to a different grading than were originally intended and granted

1   by the bar graders? The Bar Graders do not grade applicants in decimal points rather in whole

2   numbers. How, that original scoring by the bar graders is translated, and regraded (redefined) into

3   decimal points, through some mysterious calibration process, is beyond comprehension, and a

4   violation of the due process. This whole process is not transparent as to calibration standards, and

5   whether if two set of graders are employed, and how one graders is different than the other, and

6   what if any variation, is bridged?  If the graders originally score in whole number or decimals,

7   and if whole numbers are originally given, why are they reconverted to two decimals later on?

8   No answers to such questions are available.

9       **9.5  Review Procedure by the Nevada Board.** Rule 39 Exhibit D Amendment 1 to the

10  Supreme Court Rules says: (Regrade Procedure)

11          "Applicant's examinations with total scaled scores immediately (above and)
            below the passing points are reconsidered before final certification to the court. The final
12          score on each essay question shall be the average of the first score and the regrade score.
            The board believes that this grading system affords each applicant a fair and careful
13          consideration of all answers on the bar examination and that subsequent to the
            certification of the grades to the court, no useful purpose would be served by further
14          consideration by the board. Thus, after the filing the first order admitting applicants by
            the court, the board shall not consider any essay answers."

15

16      This rules is flawed in the sense that it even punishes applicants who had already passed,

17  and still subjects them to a review, and eventually such review may declare them fail. Also, it

18  only addresses to two decimals above and below the passing. Here, score does not mean

19  (according to Board's interpretation) two whole points but two decimals, which is extremely

20  arbitrary, non meritorious and capricious. Assuming a minimal margin of error of 3 to 5 scores,

21  which when multiplied with 8 essays and MPT would be from 27 to 45 scores (9x3=27, 9x5=45).

22  At least the regrading procedure should encompass that much margin of error.

23      Again, it creates two kinds of classes, one with applicants with only two decimals points

24  short of passing and another class of applicants with more than two decimals short of passing.  A

25  lesser discriminatory integer i.e. with 4 to 6 scores for mandatory regrading purposes can achieve

26  the same result.

27      **9.6 Arithmetic Error.** Nevada Bar procedure for grading is fraught with arithmetic error

which would yield incorrect test scores. It is a fundamental error to assign Plaintiff's scores in two significant figures (70.57, 62.46, 81.89 etc). (Exhibit 3), when the graders are only allowed to assign scores with one significant figure  (i.e. 1, 2, 3, 4, 5 etc.).  If Nevada Bar desire to average the Plaintiff's essays' raw score, to within two significant digits of accuracy, then the scores assigned by the examiners should reflect two digits of accuracy in the very outset. Rounding off essay raw scores to a single significant digit of accuracy, and then transferring them to two digits of accuracy, based on some hypothetical version and calibration, is a mathematical error and do not reflect the true grades, as originally given by the graders. By doing such regrading, Plaintiff is being robbed of a possible 3 to 5 points per essay question, and the cumulative margin of error may amount to 5x9=45 (being highest margin of error).  Assuming the lowest margin of error of 3 score per essay including MPT i.e 3x9= 27 (being the lowest margin of error), is added to Plaintiff's non-scaled score, he can easily pass the Nevada Bar Exam of 2002. ( Exhibit-9).

      **9.8  No Guesswork; US. Supreme Court.** US Supreme Court "insisted upon rational standards rather than guesswork when modified standards raised social disparities." (*Albemarle Paper Co. V. Moody,* 422 U.S. 405 (1975).

      **9.9 Validity in Testing.**  In general, courts have said that validity refers to the accuracy of conclusions drawn from test results. See *Allen v. Alabama State Bd. of Educ.,* 976 F. Supp. 1410, 1420-21 (M.D. Ala. 1997) ("generally, validity is defined as the degree to which a certain inference from a test is appropriate and meaningful" quoting *Richardson v. Lamar County Bd. of Educ.,* 729 F. Supp. 809, 820 (M.D. Ala. 1989), affid, 164 F.3d 1347 (11th Cir. 1999), injunction granted, 2000 U.S. Dist. LEXIS 123 (M.D. Ala.); *see also Richardson,* 729 F. Supp. at 820-21 ("A test will be valid so long as it is built to yield its intended inference and the design and execution of the test are within the bounds of professional standards accepted by the testing industry." *Anderson v. Banks,* 520 F. Supp. 472, 489 (S.D. Ga. 1981)

      ("Validity in the testing field indicates whether a test measures what it is supposed to measure."). See, e.g., *United States v. LULAC,* 793 F.2d 636, 640, 649 (5th Cir. 1986).

## VII.  BENCH MARK ANSWERS & CALIBRATION PROCESS

10.  **Arbitrary, Capricious Standards**. The decimal and two digits regrading for essays and MPT, are extremely confusing, in the absence of not knowing, what are the bench mark or the model answers, written originally by the Bar graders, and the non availability of their corresponding calibration process to the Plaintiff. The question is whether a converted two decimal points,  regraded scores coincide with the bench mark answers, since examiners must adjust the true scores of an essay, to one of the integer set values, adding or discarding fractional points in this process.  Now, this adjustment has to be done according to the scales of say 1 to 5 arbitrarily set by Defendants. It can be either due to an observation error, or done purposely because the examiner has to bring the applicants essays' grading as close as possible to the bench mark calibration. There are certain level of mathematical tabulation varying from one benchmark to another. Also, it negates the principles of precision in distinguishing the qualitative and quantitative aspects of his exam. Defendants should have used more bench mark calibration then what it is using presently in order to reach more precision and to lessen errors, if precision is the true goal.

10.1 The **"figure-skating like"** results might be good in some qualitative aspects of sports competition or a beauty pageant, but in a mostly quantitative exam like Bar, more score levels increase precision. Restrictions to five or so levels rules out precision as there are identifiable differences in between these rigid integers. That is where chances of error comes. These mathematical errors would be minimized if the applicants scores are rounded off and the examiners are not restricted to assigning only one of five such test scores values. The effect of the round off and minimizing observation errors would make the Plaintiff pass and restore him the needed scale score of 1.89. (Exhibit 3) These standards are unreasonably limiting, capricious, manifestly arbitrary, and do not judge the knowledge and skills necessary for profession. (National Council on Measurement in Education, *The Standards for Educational & Psychological Testing 157 (1999)*

## VII. PRAYER FOR RELIEF

11.    SEC. 308. **ENFORCEMENT of the American Disabilities Act**: (a) In General.--

(1) **Availability of remedies and procedures**.--The remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964  (42 U.S.C. 2000a-3(a)) are the remedies and procedures this title provides to any person, who is being subjected to discrimination on the basis of disability in violation of this title or who has reasonable grounds for believing that such person, is about to be subjected to discrimination in violation of section 303. Nothing in this section shall require a person, with a disability to engage in a futile gesture if such person, has actual notice that a person, or organization covered by this title does not intend to comply with its provisions.

(2) **Injunctive relief**.--In the case of violations of sections 302(b)(2)(A)(iv) and section 303(a), injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include  requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

(2) **Authority of court**.--In a civil action under paragraph (1)(B), the court--

(A) **may grant any equitable relief that such court considers to be appropriate**, including, to the extent required by this title--(i) granting temporary, preliminary, or permanent relief; (ii) providing an auxiliary aid or service, modification of policy, practice, or procedure, or alternative method; and (iii) making facilities readily accessible to and usable by individuals with disabilities;

(B) **may award such other relief as the court considers to be appropriate**, including monetary damages to persons aggrieved when requested by the Attorney General; and (C) may, to vindicate the public interest, assess a civil penalty against the entity in an amount-- (i) not exceeding $50,000 for a first violation; and  (ii) not exceeding $100,000 for any subsequent violation.

1    **WHEREFORE, Plaintiff requests that this honorable Court grant the following relief:**

2        (A) Declare that Plaintiff rights under the ADA were violated;

3        (B) Board's procedure violated his constitutional rights to Due Process and Equal

4        Protection, being manifestly unfair, arbitrary and capricious, applying an intermediate

5        scrutiny and;

6        (C) Grant declaratory, injunctive as well as equitable relief, to Plaintiff, in view of the

7        abovementioned regulations, citations, arguments and conduct of the Defendants, and

8        declare Plaintiff to be a successful applicant for the Bar Examination 2002, and that

9        Plaintiff be enrolled as an attorney in the State of Nevada.

10       (D) Grant him such other relief as may be possible including damages and cost.

11

12   I declare under penalty of perjury that the foregoing is true and correct.

13

14   DATED:  12-26-2002

15                                  _____

16                                  MALIK WAQAR AHMAD
                                    PLAINTIFF

17

18

19

20

21

22

23

24

25

26

27



# STATE BAR OF NEVADA

*"Making the law work for everyone"*

600 East Charleston Blvd.
Las Vegas, NV 89104
702-382-2200
800-254-2797
Fax 702-385-2878

1325 Airmotive Way,
Suite 140
Reno, NV 89502
775-329-4100
Fax 775-329-0522
www.nvbar.org

October 16, 2002

Malik W. Ahmad
608 Jade Cliffs Lane
Las Vegas, NV 89144

**OFFICERS**

**President**
Gloria J. Sturman
LAS VEGAS

**President-Elect**
N. Patrick Flanagan III
RENO

**Vice President**
Ann Price McCarthy
CARSON CITY

**Immediate
Past President**
John H. Mowbray
LAS VEGAS

**BOARD OF GOVERNORS**

Nancy L. Allf
LAS VEGAS

Bruce T. Beesley
RENO

James W. Bradshaw
RENO

Vincent A. Consul
LAS VEGAS

John A. Curtas
LAS VEGAS

Kathleen J. England
LAS VEGAS

Dara J. Goldsmith
LAS VEGAS

Rew R. Goodenow
RENO

Bridget Robb Peck
RENO

John Paul Schlegelmilch
YERINGTON

William C. Turner
LAS VEGAS

Steven B. Wolfson
LAS VEGAS

**Ex Officio**
Richard Morgan
WILLIAM S. BOYD
SCHOOL OF LAW

**Executive Director**
Allen W. Kimbrough

Applicant ID#: 59                    Code #: 185

Dear Mr. Ahmad:

I am sorry that, on behalf of the Board of Bar Examiners, I am required to notify you that your application for admission to the State Bar of Nevada must be denied based on the failure to pass the 2002 bar examination pursuant to Supreme Court Rule 70. A refund of the $25.00 licensing fee that you paid with your application fee pursuant to SCR 74(2) shall be forthcoming within thirty days.

Attached hereto is a score report listing your scores and the formulas utilized for the calculations of the same. The Board's psychometrician prepared this report. The formulae for the 2002 bar exam was approved by the Supreme Court by order dated July 25, 2002. The formulas reflected on your score report are a simplified version of the formulas reflected on the Formulas for Converting and Combining Scores as filed with the Supreme Court and are presented in this manner to facilitate your calculations.

Copies of your 2002 answer booklets and 2002 bar examination questions may be obtained by written request to the State Bar of Nevada at the Las Vegas address listed above, for a fee of $25.00. Requests must include your name and a return address, your Applicant ID number, your Code number as reflected above, and a handwriting sample.

Applications for the 2003 bar examination will be available after December 15, 2002. Completed applications are due, without penalty, by February 1, 2003. If you submitted current reference letters in 2002 and/or certified copies of your law school and college transcripts, you will **not** need to submit these items for 2003. In addition, MPRE scaled scores of 85 or higher from MPRE exams taken in the 2002 calendar year will be accepted for the 2003 examination. Any admission holds remaining on your 2002 application will continue until satisfied. All other items not mentioned above must be completed and submitted with your 2003 Application.

If you have any further questions, please do not hesitate to contact the Admissions Office of the State Bar of Nevada at (702) 382-2200.

Sincerely,

Patrice J. Eichman, Esq.
Director of Admissions

PJE/ah
Enclosures

cc:    Janette Bloom, Esq., Clerk of Court, Supreme Court of Nevada

EXHIBIT-I

# STATE BAR OF NEVADA

# APPLICANT'S ANSWERS TO QUESTIONS OF

# NEVADA BOARD OF BAR EXAMINERS

## EXAMINATION NO. 1
## QUESTION NO. 2



Conveyance

The conveyance by Ava to Bob and carol is a fee simple subject to condition Precedent Subsequent.

Fee simple subject to condition Precedent Subsequent

A fee simple subject to a condition Bo Subsequent where a property would be given to another person in case the conditions are broken.

Recording    Here the deed was recorded so the delivery of the deed was effective.

Mortgage    Bob moves into B.A. Bob borrows 10,000 from Dave. This creates a security interest in favor of Dave.

Purchase Property Money Mortgage

A purchase Property money when taken from a Private person Creates a

a security interest in his favor and
it has priority over all other
interest. called Junior interests

Acceleration.   An acceleration clause
is when upon foreclosure a
mortgagee has to pay all
the money for redemption
before the foreclosure.

Default     Both defaulted on the
promissory note.  Here, Bob has
not recorded the trust deed.

Sale of B. A to Frank

Fee Simple Subject to condition
Subsequent
       Here the deed has a
Changing executory interest.
Life Estate   Also, the deed's

is sodfit  This deed s good for the
life of Bob, who's a grantor
here ", Bob does not give any
special warranty of title
to this deed.

will  He devised all his will
to carol.

Notice  Jurisditon   Dave s a
bonafide purchaser of WachAcre
who did not record.

His recording of the
deed would have made
no diffence.

Race Notice Statue

The person who record,
first has to be a bonafide
purchase and also to
Record first

David did not re wd Any.

Carol would not get anything

Dave have given a
purchase money order. His
rights are superior to
any one else. Any one
who give money titus
purchase EUC sales cert-
tial holder. His interest are
senior to anybody else.

Dave is entitled to B N

Frank is not entitled to

B. N

Generalize A purchase money order
to superior to any other
title. A fact notice Jurisdiction
would not make any difference

SCORE REPORT FOR NEVADA BAR EXAMINATION

Code No.:              0185

Examination Date:      July 2002

Test Result:           FAIL

### ESSAY TEST RESULTS

| Essay Question | Converted Score |
|----------------|-----------------|
| 1-1 | 91.75 |
| 1-2 | 59.30 |
| 1-3 | 84.08 |
| 1-4 | 81.64 |
| 2-1 | 69.49 |
| 2-2 | 81.98 |
| 2-3 | 70.57 |
| 2-4 | 62.46 |
| MPT | 92.51 |

### ESSAY, MBE AND TOTAL SCORES

| | |
|---|---|
| Sum of Converted Scores | 693.78 |
| Essay Scale Score | 147.79 |
| MBE Scale Score | 119.49 |
| Total Scale Score | 73.09 |

Essay Scale =  .22823*(Sum of Converted Scores) + -10.5466
Total Scale = {(2)*(Essay Scale) + MBE Scale}/5.679

In order to pass, applicants must achieve a Total Scale Score of 75.00 or higher AND achieve a Converted Scale Score of 75.00 or higher on at least three written questions


EXHB — 2

EXHIBIT 4

**UMC**
UNIVERSITY MEDICAL CENTER

*Care How Much We Know,*
*Know How Much We Care.*

PATIENT IDENTIFICATION

PHYSICIANS STAMP

## QUICK CARES / CLINICS

☐ **ER / Emergency Department**
2200 W. Charleston Blvd.
Las Vegas, NV 89102
383-2000

☐ **UMC Quick Care**
2231 W. Charleston Blvd. 1st floor
Las Vegas, NV 89102
383-2274

☐ **Pediatric Emergency Department**
2200 W. Charleston Blvd.
Las Vegas, NV 89102

☐ **Pescole Quick Care**
9320 W. Sahara
Las Vegas, NV 89117
Q.C. 383-3850    Clinic 383-3633

### CLINICS

☐ **Nellis Quick Care / Primary Care**
61 North Nellis Boulevard
Las Vegas, NV 89110
Q.C. 644-8701    Clinic 383-6250

☐ **Total Life Care**
2231 W. Charleston Blvd. 1st floor
Las Vegas, NV 89102
383-3755

☐ **Rancho Quick Care / Primary Care**
4331 N. Rancho Drive
Las Vegas, NV 89130
Q.C. 383-3800    Clinic 383-3630

☐ **Ernst F. Lied Ambulatory Center**
1769 E. Russell Road
Las Vegas, NV 89119
Q.C. 383-3500    Clinic 383-3960

☐ **Ernst F. Lied Ambulatory Center**
1824 E. Pinto Lane
Las Vegas, NV 89106
Internal Medicine
383-3842

☐ **University Women's Center**
525 Marks Street
Henderson, NV 89014
Q.C. 383-3401

☐ **Summerlin Quick Care / Primary Care**
N. Buffalo
Las Vegas, NV 89128
Q.C. 383-3750    Clinic 383-2650

### QUICK CARES / CLINICS

☐ **Sunset Quick Care / Primary Care**
525 Marks Street
Henderson, NV 89014
Q.C. 383-6210    Clinic 383-6230

☐ **Spring Valley Quick Care**
4180 S. Rainbow Blvd. Suite 810
Las Vegas, NV 89103
248-8677

☐ **Craig Quick Care / Primary Care**
2202 W. Craig Road
N. Las Vegas, NV 89132
Q.C. 383-6270    Clinic 383-6280

☐ **Boulder Quick Care**
812 Boulder Highway
Las Vegas, NV 89121
383-3201

☐ **CCSN Quick Care / Primary Care**
6375 W. Charleston Boulevard
Las Vegas, NV 89102
Q.C. 383-6290

☐ **Ilte Quick Care**
near Peak Street
Las Vegas, NV 89106
383-2565

☐ **Laughlin Quick Care / Primary Care**
150 E. Edison Way
Las Vegas Boulevard South
Laughlin, NV 89029
(702) 329-3364

☐ **Jean Quick Care**
Jean, NV 89109
383-2210

OTHER INSTRUCTIONS

PHYSICIANS SIGNATURE

SIGNATURE OF PHARMACIST CHECKING MEDICATION
AND COUNSELING PATIENT

| | | | |
|---|---|---|---|
| **DATE** | 7·31·02 | | |
| **PATIENT NAME** | MALIK W. ALI | | |
| **ADDRESS** | | | |
| **CITY** | L V | **STATE** NV | **ZIP** |
| **DATE OF BIRTH** | | **SOCIAL SECURITY NUMBER** | **PATIENT PHONE** |

**MEDICAL HISTORY**

**DIAGNOSIS**

**ALLERGIES**

**LOCATION (ER, 4N) RX WRITTEN    DATE / TIME OF DISCHARGE**

### DISCHARGES TO BE WRITTEN 24 HOURS IN ADVANCE

| DRUG AND DOSE | QUANTITY | DIRECTIONS | REF |
|---|---|---|---|

**HEIGHT ____    WEIGHT ____**

FOR PHARMACY USE

PHYSICIAN'S PHONE/BEEPER NUMBER

DEA #

SIGNATURE OF PERSON RECEIVING MEDICATION AND
COUNSELING

SIGNATURE OF PATIENT REQUESTING
NON-CHILD PROOF CONTAINER

☐ DISP. ONLY AS WRITTEN

ORAS0283219-

**EXHIBIT-4**

ORIGINAL: PHARMACY          COPY: TO CHART

2/02

August 5, 2002

Patrice J. Eichman, Esq.
Director of Admissions
State Bar of Nevada
600 East Charleston Blvd.
Las Vegas, Nevada 89104

Re:    Malik W. Ahmad, Bar applicant 059

Dear Ms. Eichman:

As per my promise, I am sending the medical certificate regarding the carpel tunnel syndrome for which I needed special adjustment for regular keyboard instead of the one used with the laptop in recent bar examination at the Cashman Field Center.

Thanks

Sincerely.

Malik W. Ahmad
608 Jade Cliffs Lane
Las Vegas, Nevada 89144

EXHIBIT- 5

SCORE REPORT FOR NEVADA BAR EXAMINATION

Code No.:                0149

Examination Date:        JULY 2001

Test Result:             FAIL

### ESSAY TEST RESULTS

| Essay Question | Converted Score |
|---|---|
| 1-1 | 73.13 |
| 1-2 | 59.73 |
| 1-3 | 57.12 |
| 1-4 | 71.29 |
| 2-1 | 78.81 |
| 2-2 | 77.08 |
| 2-3 | 63.14 |
| 2-4 | 79.32 |
| MPT | 67.51 |

### ESSAY, MBE AND TOTAL SCORES

| | |
|---|---|
| Sum of Converted Scores | 627.13 |
| Essay Scale Score | 134.74 |
| MBE Scale Score | 133.60 |
| Total Scale Score | 70.98 |

Essay Scale = .22648*(Sum of Converted Scores) + -7.28984
Total Scale = {(2)*(Essay Scale) + MBE Scale}/5.679

In order to pass, applicants must achieve a Total Scale Score of 75.00 or higher AND achieve a Converted Scale Score of 75.00 or higher on at least three written questions

EXHIBIT - 6

November 22, 2002

Patrice J. Eichman, Esq.
Director of Admissions
State Bar of Nevada
600 East Charleston Blvd.
Las Vegas, Nevada 89104


Re:    Malik W. Ahmad, Bar applicant 059


Dear Ms. Eichman:

Previously, I had requested the detailed formula utilized for calculations of the scores for Nevada
Bar Examinations July 2002 on 11th November, and I am still expecting a reply to that. Also, I
requested a meeting with you in your office to have a better understanding of this formula.  I will
appreciate a quick reply.

Thanks.


Sincerely,


Malik Ahmad
Bar Applicant 2002
608 Jade Cliffs Lane
Las Vegas, Nevada 89144


EXHIB - 1

EXHIB - 8



# NATIONAL CONFERENCE OF BAR EXAMINERS
## MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION

### EXAMINEE'S REPORT OF SCORES

Please review carefully all information printed below. If any data are incorrect or incomplete, contact the board of bar examiners in the jurisdiction to which your scores were reported.

| RAW SCORE | SCALED SCORE | TEST DATE | SOCIAL SECURITY NUMBER* |
|-----------|--------------|-----------|-------------------------|
| 35 | 112 | 11/09/01 | 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 |

* If you did not indicate a Social Security number on your answer sheet, an identification number was assigned to your record for processing purposes.

AHMAD, MALIK W
608 JADE CLIFFS LN
LAS VEGSS, NV  89144

Your scores (shown above) were reported to the following jurisdiction as you requested in Block J of your answer sheet:

NEVADA

This jurisdiction requires a minimum passing **scaled** score of:

85

Each jurisdiction has the authority to determine its own passing score. If the jurisdiction you chose does not list a passing score, check with the board of bar examiners in that state to determine the passing score.

### EXPLANATION OF SCORES

Your **RAW SCORE** is the number of test questions that you answered correctly in the examination. The lowest possible raw score is 0; the highest is 50.

**SCALED SCORES** are standard scores that range from 50 (low) to 150 (high). The original mean (average) scaled score was established at 100. The conversion of raw scores to scaled scores involves a statistical process that adjusts for variations in difficulty of different forms of the examination so that any particular scaled score will represent the same level of knowledge from test to test. For instance, if this test were more difficult than previous forms, then your scaled score would be adjusted upward to account for this difference. If this test were easier than previous forms, then your scaled score would be adjusted downward to account for this difference. The purpose of these adjustments is to help ensure that no examinee is unfairly penalized (or rewarded) for taking a harder (or easier) form of the test.

### ADDITIONAL SCORE REPORT REQUESTS

If, after the examination, you decide that you would like to have your scores sent to one or more boards of bar examiners in addition to the jurisdiction you indicated on your answer sheet, you may do so by writing to the address below. Your request should include your name, address, Social Security number, date of birth, test date, your signature, and each board of bar examiners you wish to receive a copy of your scores. Enclose $15.00 for each board of bar examiners you request.

Duplicate score reports may also be requested by following this procedure.

### REQUESTS FOR RECHECKING OF ANSWER SHEETS

A request to have your answer sheet rechecked must be made within three months of the original test date. The request should include your name, Social Security number, date of birth, test date, and your signature, and should be sent to the address below.

EXHIB-9

Multistate Professional Responsibility Examination
Records Department
P.O. Box 451, Iowa City, Iowa 52243
Telephone: (319) 337-1304

SCORE REPORT FOR NEVADA BAR EXAMINATION

Code No.:                0185

Examination Date:        July 2002

Test Result:             FAIL

ESSAY TEST RESULTS

*MINIMUM ERROR of 3 Score*

| Essay Question | Converted Score | | |
|---|---|---|---|
| 1-1 | 91.75 | +3 | 94.75 |
| 1-2 | 59.30 | +3 | 62.30 |
| 1-3 | 84.08 | +3 | 87.08 |
| 1-4 | 81.64 | +3 | 84.64 |
| 2-1 | 69.49 | +3 | 72.49 |
| 2-2 | 81.98 | +3 | 84.98 |
| 2-3 | 70.57 | +3 | 73.57 |
| 2-4 | 62.46 | +3 | 65.46 |
| MPT | 92.51 | +3 | 95.51 |

*27*

ESSAY, MBE AND TOTAL SCORES

| | | |
|---|---|---|
| Sum of Converted Scores | 693.78 +27 | *720.78* |
| Essay Scale Score | 147.79 | *153.95* |
| MBE Scale Score | 119.49 | *119.49* |
| Total Scale Score | 73.09 | *75.25* |

*Pass*

Essay Scale =  .22823*(Sum of Converted Scores) + −10.5466
Total Scale = {(2)*(Essay Scale) + MBE Scale}/5.679

In order to pass, applicants must achieve a Total Scale Score of 75.00 or
higher AND achieve a Converted Scale Score of 75.00 or higher on at least
three written questions

EXHIBIT- #9